Final case in our call today is agenda number 20, case number 109463, Wright Development Group, LLC, etc. v. John Walsh, etc. May it please the court, counsel. My name is Terrence Sheehan, along with Michael Franz. I represent the appellant, John Walsh, in this matter. I am here today to ask this court to do two things. First, I ask that you reverse the appellate court First District's decision that this case is moot. Second, I ask that you reverse the trial court's decision that stated that John Walsh was not entitled to immunity under the Illinois Citizen Participation Act. The issues before this court today are matters of first impression because no Illinois court has reviewed the scope or the proper scope of immunity under this new act. John Walsh has raised three issues for review. One, whether the appellate court erred when it found that Walsh's appeal was moot. Two, whether the trial court erred when it found that John Walsh did not enjoy immunity under the Citizen Participation Act. And three, whether the trial court erred when it denied John Walsh's motion to dismiss under the act and when it denied John Walsh's motion to reconsider or alternatively for entry of a Rule 304 order. John Walsh is the president of a condo association for a building located at 6030 North Sheridan Road in the city of Chicago. Mr. Walsh exercised his constitutional rights when he appeared at Alderman Mary Ann Smith's office pursuant to a public notice to discuss issues that were matters of public concern. He got up at that meeting and he discussed issues related to the condo conversion and a lawsuit in which his condominium association had brought against the developers of his building. His reward for participating in this government process was to be slapped with a defamation lawsuit. The plaintiff's goal in filing this lawsuit was clear. It was to silence Walsh for participating in the government process and exercising his free speech rights. Because the lawsuit was a classic slap, John Walsh brought a motion under this new act. There is no question that this is a slap lawsuit? I believe there is no question, Your Honor. The trial court did not believe it was a slap, but we think the trial court grossly erred in applying the immunity under the act. The new act, Your Honor, was promulgated in 2007 and the purpose for this act, the stated purpose of the act under Section 110, 735 Section 110, was to find that there is a disturbing increase in these types of lawsuits filed in Illinois. Defamation suits? Not only defamation suits, Your Honor, slap lawsuits. Now, slap lawsuits are lawsuits which are brought against someone to silence them for participating in the government process for exercising their free speech rights. Slap lawsuits take different forms. Traditionally, a slap lawsuit is a defamation lawsuit. But there are other lawsuits which can be brought for, you know, abuse of malicious prosecution, tortuous interference with business expectancy or tortuous interference of a contract. There are different types of torts that can be brought under a slap suit. But the legislature, the General Assembly, found that Illinois was experiencing an increased number in these types of lawsuits. And it decided to weigh the interests of protecting First Amendment rights and not just protecting the free speech rights, but also to petition the government. Counsel, in this lawsuit, is there a claim for damages? Yes, Your Honor, there is. Damages for defamation. You mean, did the plaintiff bring a claim for damages? What they consider the slap lawsuit. No, Your Honor, what we're advocating is that the lawsuit was a slap. I understand. But is there damages sought to recovery for the slap itself? Yes, Your Honor. The damages are the damages that are recoverable under the Act. So what the Act did is it set up this new process. Including attorney's fees. Correct, Your Honor. And that is that the attorney's fees are specifically outlined in not only the public purpose section, but also in a section for attorney's fees, which state that all reasonable attorney's fees in connection with the motion to dispose shall be awarded. So it's a mandatory attorney's fee. Does the Act provide any damages for the slap itself? Not derivative damages like attorney's fees. No, no, just attorney's fees, Your Honor. But there's also the vindication of identifying this as a slap. And that's why we believe that there's a substantive right that is outlined in the Act. The substantive right is that you can identify this case as a slap, that you are a victim of a slap, and that you then can recover your fees as a slap. The problem with the Circuit Court's ruling is that the entire purpose is thwarted if there is no appellate right. If the purpose of the Act is to identify and fully adjudicate slaps in Illinois, then there must be an ability for a proponent of a motion to have an appellate review of that. Because the purpose of the Slap Act is to deter people from filing these frivolous lawsuits. Let's talk about the appellate court's role in this for a minute. Any separation of powers problem with the legislature indicating to the judiciary that there's an absolute right to an appeal in a particular case? Or, before you answer, or do we look at this as the appellate court abusing their discretion in not deciding to take the appeal in this case? Well, it's interesting, Your Honor, because, and I'm going to answer your question, but we have to have a little bit of procedural history to understand this. What happened is when I filed this motion, I was denied the motion. So I filed a motion to reconsider, and then I filed alternatively Rule 308 finding. Because under the Act, under Section 20A of the Act, it actually provides that you have a right to an immediate appeal, an interlocutory appeal, and it states that this right to an appeal is interlocutory or not. Well, that means there's only two types of appeal, an interlocutory appeal or one at the conclusion of the trial. Is there a discretionary appeal or a non-discretionary appeal? Well, it's a good question because according to the Act, it's not a discretionary appeal. So what happened is I understood the case law to mean, and specifically this case's precedent algorithm, that the only way in which you can get, the only way the appellate court can get jurisdiction is either through a final order or through an exception that is outlined in the Supreme Court rules. Now, those exceptions are, you know, Rule 306, 307. Rule 307 at this point does not, it's not in harmony with Rule, or excuse me, Section 20A of the Act. There's only one court decision, one published decision in Illinois related to the Act, and that's the Munn v. Brown decision out of the Fifth District. And, Your Honor, getting, Justice Thomas, getting to your question, the Munn court found that to the extent that a defendant is trying to use the, trying to get jurisdiction through the rights outlined in the Act, it said there's no, the Illinois Supreme Court is the only body that can allow you to do that. Well, there's no question that we can amend our rules. That's correct, Your Honor. But my question remains. We can amend our rules thinking it's a good idea, I suspect, and this court can decide that. But are we still faced with a problem in maybe sending a message to the legislature, even by amending the rules, that there was no separation of powers problem with the legislature indicating that there's an absolute right to an appeal in a case? Well, Your Honor. Is that within their purview or our purview? Well, I think it's clearly within your purview under the Constitution that the Constitution states, clearly states that all final orders are appealable. Any exception to that is in your purview, Your Honor. So to the extent that the court, or excuse me, the legislature, unilaterally did that, that could be a constitutional problem. That's exactly what Munn found, Your Honor. However, we are not before you on that issue. And I can tell you that I raised that issue, in fact, with this court. When I filed the Rule 308 findings, I was denied Rule 308 findings. At that point, I was stuck in this legal purgatory. Your idea of the 308 finding was you can get what the Act intended you to get. Get jurisdiction. That's what I wanted. And I knew I couldn't get it otherwise. So what I did is ask for jurisdiction under 308. I didn't have it under 308, but I had a clear right under the Act. So what I did is I filed a motion of Rule 383 motion before this court. And if you look at the supplemental volume for the record on page 40, I asked this court to do three things. I asked the court to take it on a supervisory issue and just rule in my favor. I also asked the court then to send it back to the trial court and order the trial court to give me jurisdiction under 308. And third, and to your issue, Justice Thomas, is I asked this court to amend Rule 307 so that no future litigants would be stuck in this vortex. I mean, I was really in a legal purgatory where I had nowhere to go and I had to wait until the end of the lawsuit to file my appeal. Now I'm stuck in a perverse position that I don't have any right to appeal because now, because I couldn't do it at the time that the Act or the time that the order was entered, because there's no harmony between the Supreme Court rules and Rule 20, and then I wait until the end, which was consistent with what Brown held, then I wait until the end, and now the appellate court says, well, you already won, so you don't have a right to do it. You've already got what you wanted. So basically, when you look at Mund v. Brown and you look at this appellate court ruling, what the status of the law is right now is that no true SLAPP victim who receives an erroneous court order will ever have any appellate right. And that goes completely against not only the purpose of the Act, which is to identify and adjudicate, the purpose of the Act is to deter these lawsuits, but it also goes against the plain language, which is exactly what you said, Justice, that the legislature was trying to give us the right to appeal these things. Are you asking for the same thing today? Are you asking that we decide either there is an immediate right to an appeal or amend our rules with respect to 307, maybe with a message to the legislature that we're doing it under? A stern rebuke, Your Honor. Yes. Well, actually, I could take it further. When I was denied my Rule 383 findings, and I want to put that in context, too, what happened is this court allowed us to do briefing. We did considerable briefing on the issues. Then when we won on the innocent construction rule, which, of course, it's a slap. You're going to win. The purpose of a slap is it's a bogus, frivolous lawsuit. Once we won on the 2615, the other side filed a request to this court. It said, now the case is moot. It doesn't matter. You don't have to rule on their supervisory order. The case is over. And then the court denied our motion for supervisory order. So at that point, I approached and I asked the court to take judicial notice of this. I requested the rules committee because, as you know, there's two ways in which to change Supreme Court rules. Under Rule 3, you either do it through the rules committee or strictly by court order. I asked you to do it through court order under my 383 motion, but that was denied. And then I asked to do it through the rules committee. The rules committee, it's Proposal 080-05. I outlined all the reasons why. There's been a public hearing. The rules committee has decided that they're going to recommend to you, and I believe there has been a public recommendation, that it should be under Rule 306 as opposed to Rule 308 or 307. So, Your Honor, what I would ask is make it discretionary. The problem with making it discretionary, though, is that the purpose, if you look at the motion, I'm sorry, if you look at the procedural, actually the process that's outlined in the act, once you file a motion under this act, there's new procedures and mechanisms, because the point of this is to keep the cost down, is to identify whether this is a slap immediately, and to get this done within 90 days. And there's reasons behind that. One is to keep the cost down that you don't go through the entire case like I did. I didn't have to go through the entire case, but you could go all the way through trial and then find out later that you were correct. You are not asking us to review the merits, then? I am, absolutely, Your Honor. I'm certainly asking you to review the merits, because for the same reason. If you don't review the merits. Whether or not we're faced with a true slap case? Yes, Your Honor. And the. . . Yes. And I can discuss the merits. Part and parcel of our discussion of the merits would, in your hopes, rectify the situation from this point forward by addressing the appellate court. Correct, Your Honor. Or what the appellate court did. I think what you could do here is you could address the appellate court decision. You could say we recognize the situation that Mr. Walsh was in. In order that no other future litigants will have to deal with this and we don't find ourselves in this situation, we will amend Rule 307. Typically, we don't allow the legislature to tell us what is appealable, what's not appealable. But given the fact that. . . And, in fact, the amicus brief outlined a couple of reasons why it's important to have this immediate appellate right. And I've outlined the reasons why. And it's, again, the whole purpose is to identify these things early on and end the lawsuit so you're not continuing on. Because the purpose of a lawsuit is to. . . Would a permissive appeal provide these benefits? It could, Your Honor. But under a permissive appeal, you're continuing litigation. You then have to go and get permission from the court, which is going to increase fees unnecessarily. Because my view is, you know, the other side of this is if we allow this, there's going to be floodgates of all these people now flooding the appellate court. Well, if they're going to appeal it, they're going to appeal it anyways. They might as well appeal it now and not find themselves in a situation like me. They might as well save the money and get the decision up front. And if someone abuses that, the court certainly has the power to, you know, impose sanctions against people who are abusive. On the other side of that coin, though, going back to the recommendation of rules, I mean, you can foresee certain cases in which the appellate court could take a look at it, definitely not a slap suit on its face, for example. And I'm sure there's other examples. You say we're going to exercise our discretion. We know there's an absolute right to an appeal, but that's not the animal we're dealing with here. And, therefore, stop it at that point rather than have to go through an appeal, give them discretion. You know, that may have been the idea behind the rules committee saying make it rule six. I understand, Your Honor. I understand. I mean, that is the flip side of the coin. I mean, my view is that if it isn't a slap suit, then it would be just as easily to say this isn't to continue on. Yes? Is the case rendered moot before attorney fees are decided? Well, no, Your Honor. I mean, because we believe it is a substantive right. You have a substantive right to get this identified as a slap. You have a substantive right to your attorney's fees for everything in connection with the slap. So, therefore, it's not moot. If you find that it's not moot, I'm asking you then to get to the merits. And, briefly, I don't have much time on the merits. This is a classic slap because Mr. Walsh was exercising his First Amendment rights to free speech. He was at a public meeting. His comments to the reporter were based on the questions or the purpose of the meeting. And we cited several cases, Supreme Court cases, cases throughout the country, interpreting other slap cases that when you advocate for a position or when you speak to a reporter, that is a valid way in which to effectuate change. It is a valid way to get to the government and express your views to the government. And, particularly, when you have in the statute, it states that the government is defined as not only persons and agencies and elected officials, but the electorate at large. So, you know, there's tons of case law. Not only my brief, but even U.S. Supreme Court case law that says that this is, in the American experience, this is absolutely a way in which you can get your message out. Is there a risk that you could add a slap count that is an issue and use that as a vehicle to get an automatic appeal when a case would otherwise not be appealable? No, Your Honor, because under the process, once you file a slap motion, you have 90 days in which to take discovery, particularly on the immunity, whether or not you're immune. And then the trial court has to make a decision. So that's why the expedited framework of this is nice in that if you truly believe it's a slap, you can file it. You have the discovery. It's going to be a decision. And if it's against you, you can immediately take it up to the appellate court, and they can quickly decide. If you're wrong, you don't get attorney's fees. You've lost that motion, and you continue on with the case. Is that why you continue to refer to this as a true lap suit? True slap suit. Yes, Your Honor, because there was no defamation here. You're going to hear from the other side. They're trying to say that he publicly defamed this man and he maliciously defamed him. There was no defamation. He never, ever referred to the plaintiff. So in a situation like this, it's clear that the plaintiff is trying to chill John Walsh and trying to prevent him from speaking out. I mean, that's the essence of a slap, and that's what we have here. You know, you have all these chicken little scenarios that, oh, if we do this, what can happen? That's not what happened here. I'm not asking you to look at the outer contours of this act. What I'm asking you to do is look at John Walsh's conduct, and it's clearly within the protective fold of this act. So therefore, Your Honor, I ask that you do find that this case is in moot for all the reasons that we stated and also that you find on the merits, and particularly if you're considering not going to the merits, if you don't go to the merits, it will further delay this case, and it will increase the cost, and it will continue litigation, which is against the purpose of the act. Thank you. You may proceed, counsel. Good morning. May it please the Court. David Goodman on behalf of Wright Development Group. I'd like to start by pointing to the conduct that really is at issue. In this instance, Mr. Walsh knowingly made a false statement of fact to a reporter. He falsely attributed certain issues, fraudulent conduct, to an entity known as Wright Development Group, my client. How do we know this? We know this because it's in the newspaper. We know this because this is what was actually reported. We know what was at issue in this case, not what Mr. Walsh may or may not have said. In a hearing conducted on behalf of Alderman Smith, we know what he said because it was in the newspaper, and we also know Mr. Walsh himself acknowledged when he was deposed. When he ultimately came talking about delay, we had to bring a motion to compel to make Mr. Walsh appear for his deposition because he wasn't compliant. Mr. Goodman, just to clarify, in my mind, the 2-6-15 motion to dismiss was granted, so the lawsuit is at an end. Is that correct? It is actually on appeal. This sometimes is a defendant and it's in bankruptcy and that's been stayed. So that decision is currently on appeal, but it's been stayed. But whether or not we agree with the ultimate finding in that case, initially we had a basis for bringing the claim. Mr. Walsh knew that Wright Development Group had nothing to do whatsoever, actually, with the 60-30 condominium conversion. He knew that it had nothing to do at all with the lawsuit, that it wasn't a party, that it wasn't being sued for fraud, that it didn't make any representations to anybody relating to the condominium development project. It wasn't involved in any way, shape, or form, and that was something that Mr. Walsh was aware of. And Mr. Walsh ultimately, when he was deposed, acknowledged when he was asked by the reporter who was the developer, he identified the developer as Wright Development Group. Again, as to the merits, we believe that the trial court erred when it ultimately granted the motion to dismiss pursuant to 2615. One of the arguments that Mr. Walsh has advanced is that somehow he has been prejudiced by the delay, by being forced to proceed through litigation. I would go back to the history in this particular instance. Mr. Walsh filed a motion to dismiss pursuant to 2615, the case had been pending for five months, it was fully briefed, and then, rather than proceeding on that, he filed a new motion. At that point, he then sought, he basically extended things 90 days and sought a ruling as to whether or not his conduct fell within the contours of the act. We would argue that, and have not, and have argued, and have argued successfully, that his conduct, making a knowing misrepresentation of fact, attributing conduct to Wright Development Group, that he was aware. This is an instance of actual malice. He was aware that Wright Development Group had nothing whatsoever to do with the project. He chose yet to report that to the paper. The court, considering that, looking at the evidence, concluded that, in fact, Mr. Walsh's conduct did not fall within the act. His counsels talked about the purgatory in which Mr. Walsh found himself. Again, the most expedient thing could have been to simply, if he thought that he was right, proceed and get a ruling. Even after the court denied his motion, he could have, again, sought a ruling on the 2615 and gone to the conclusion of that. But he chose not to do it. He took a detour because, frankly, if your goal really is to get things resolved, he would have sought resolution. This is really no different. The relief that he's seeking is really no different than any litigant who is a defendant in a case, brings a motion to dismiss. That motion to dismiss is denied, and he's not happy because he has to go ahead and litigate through the case. And at some point in time, he may succeed. The fact that he ultimately succeeds in the case doesn't mean that the case was without merit, that it was frivolous. And in fact, this Court's rule, Rule 137, notes that the fact that a litigant is ultimately unsuccessful in prosecuting a claim doesn't mean that the claim in itself, in its first instance when it was brought, was brought on a frivolous basis. It was brought without any basis at all. And so in this particular instance, he's saying, this must be a slap because the case was ultimately dismissed. The fact that it was dismissed doesn't mean it was a slap. And again, we look back, if you want to look at the conduct that we're suing for specifically, it's articulated in the complaint, which it has as an exhibit a copy of the article. It has a copy of the article that is referring to Wright Development Group as the developer. Mr. Walsh has acknowledged that he was the source of that to the newspaper reporter. He is the person who said Wright Development Group was the developer. So again, I think the trial court in considering this got it exactly right. I think that when Judge Quinn was evaluating that element, I think that he saw this conduct, this intentional misstatement. Counsel, though, isn't it true that the Condo Association was against 630 Wright Management? No, no, there are several defendants in that case. One of the entities that is being sued in that case is an entity known as Wright Management. And there's two Wrights? There is Wright Management, there is Andrew Wright, and Jamie Wright. The Wright Development Group is not the same as 6030 LLC. The developer was 6030 LLC. Again, Mr. Walsh has acknowledged that he knew that the developer was 6030 LLC. So yes, there are people named Wright who are involved in this case, in this litigation. But Wright Management Group is not Wright Development Group. It is the same spelling? Oh, Wright Management is spelled the same. It does a different function. It is not the developer. It was a property manager. Could it be that the reporter got it wrong? Is that a factual question? I don't believe so. Mr. Walsh himself has conceded when he was asked who the developer was, he told the reporter it was the Wright Development Group. He was asked again, are you sure? He said yes, very. So I don't think that there's any dispute, shouldn't be any dispute, as to who he, what he said to her when she asked who the developer was. Is that something ultimately in litigation, if we, you know, proceed ahead, is there something that might be a question of fact as to what he was thinking, what was said, what she would say he told her? Perhaps we didn't even have an opportunity to speak with her, to depose her. And the way the statute is set out, of course, once he brought his motion, the court did state all discovery, except the discovery that it felt was the developer. And the court calculated to the, to get information relative to the issues, relevant to the issues before it on the CPA motion. And in this instance, again, Mr. Walsh was deposed. And in fact, Judge Quinn, in his opinion, talks about why, what he saw from the deposition, what he saw from the allegations of the complaint that led him to believe that, in fact, this conduct did not fall within the ambit of the act. Did you file an appeal based on the ultimate dismissal? Yes. Yes, we did. The issues, though, and again, with respect to the issue of mootness, as I said, this really, this issue is really no different than seeking an interlocutory appeal on the motion to dismiss. I can't tell you. I'm sure that you've all heard it as judges before you became justices. People believe that the claims asserted against them are frivolous. They're without merit. How could this be true? I mean, clients always say, you know, that, of course, this is frivolous. This is entirely without merit. And we proceed. We litigate. And sometimes we're successful on motions to dismiss. And if we were successful on the motion to dismiss, we avoid the expense associated with discovery in the case, perhaps. We avoid the risk in the litigation going forward and expense associated with the litigation going forward. Litigation that we may ultimately win. But under our system, we don't have these appeals from these interlocutory denials of motions to dismiss. That's just not what our system is like. There are jurisdictions where that does happen in places like New York where you can appeal from all kinds of decisions. But that's not our system. That's not how we do it. And I believe, I don't agree with the construction of the Act that it suggests that there is a right of immediate appeal. That's what the legislature was seeking to do. Because if it was seeking to do it, that would be unconstitutional. I don't think you need to read it that way. I think you could read it that to the extent that an appellate court does take an appeal, does accept a discretionary appeal, if a trial court does believe that there is a reason to certify the question for appeal, and it does believe that an appeal would advance, because there may be some question of law that needs clarified, or that it would advance the litigation, if it certifies it and the appellate court accepts it, then it must do it on an expedited basis. That's how I read the Act. I think that's what it says. I don't think it says that there is a right to immediate appeal. Again, if it did say that, that would be unconstitutional. Is your appeal on the dismissal based on innocent construction, did you mention that stayed because of bankruptcy? Yes. Mr. Goodman, if in this situation, where the defendant's slap motion was denied, but his 216 motion was allowed and you didn't appeal, that would end the case. Is that correct? He has no appeal from the slap motion. He had no appeal. In fact, had he proceeded on his motion to dismiss and let the court rule on it, apparently he would have won. That's what happened, ultimately. That would have been decided many, many, many months before he presented his motion. But then the issue of attorney fees could never be reviewed. Well, the fact that it's like if a party brings a motion, if you have a Consumer Fraud Act claim, Consumer Fraud Act itself would provide for the potential for attorney fees for a prevailing defendant. There's a burden, but the fact that you win doesn't mean you get attorney fees. And the cases that they've talked about, that they've cited that say, well, really, you should be able to pursue this relief because we think that we're being denied this right to pursue attorney fees, if they really believe that their claim, that our claim against them was without merit, they could have brought a motion under Rule 137. They can bring that after the resolution. They can bring that after the motion to dismiss is granted. If they thought there was no merit, that it was a frivolous case, there is already a mechanism that would allow that to be reviewed, 137. They could bring that motion and have it decided. I don't think that they will, they shouldn't, because it isn't a frivolous claim. It isn't without merit. Again, we have appealed because we believe the court got it wrong. If the court is ultimately affirmed, it doesn't mean that our claim was frivolous, it was brought for the purpose of chilling Mr. Walsh from his activity. When they talk about the constitutionally protected right, the cases that have addressed that have made it clear one does not have a constitutionally protected right to make false statements of facts, to lie. There is no privilege that is not a protected act. The constitution does not protect that. There is a distinction. And the act itself doesn't abrogate the common law with respect to what's protected and what's not protected. In fact, the source of law, because it doesn't identify what it's protecting, other than by referring to the constitutionally protected rights, the case is interpreting the constitution. So again, in this particular instance, he didn't have a right to make the misrepresentations,  the false attribution. And again, to Justice Burke's question, we believed that to be the case. When we read the paper, when we saw the photograph of Mr. Walsh in front of the building, Mr. Walsh certainly knew that he had a right to make the misrepresentations. And we believe that to be the case. Because he is actively involved in the litigation, who the parties to that case were, who the developer in the case was, and he ultimately acknowledged that when he was deposed. With respect, I guess, to the concern, the expressed concern about what would happen, what happens to the SLAPP victim? Again, that presumes a finding that in fact a lawsuit, it assumes actually that a litigant who brings a lawsuit that's unsuccessful is bringing it for an improper purpose. The fact that a litigant is unsuccessful in litigation doesn't mean that the lawsuit was brought for an improper purpose. And in fact, I think sitting here listening today to the cases before you, there are, you know, you bring different facts, you interpret law, and the fact that people disagree doesn't mean that there was any, that the actions that they took, to seek relief, to seek redress, was in any way, or should implicate in any way that they've done anything wrong or malicious. Well, Mr. Goodman, I'd just like to go through some of the requests that Mr. Sheehan had as to possible remedies, and maybe even expand on that. I take it you agree we can review the propriety of the trial court's denial of the motion to dismiss under SLAPP, and that that's a de novo review? I think that's correct. And if we agree with the trial court, that ends the matter. If we reverse that decision, then we would send it back to the trial court on the issue of attorney's fees, I take it? Well, I'm not certain that that's true. It depends on what the court did. So, for example, if the question was, I mean, it depends on the way in which the court looked at the trial court's decision, whether or not the trial court, you know, the trial court, in explaining why it ruled the way it did, made statements about the length of time and so forth. I don't know whether the court, in reviewing the issue, would be reviewing it, you know, answering a question about, for example, whether or not actual malice, you know, conduct that is the product of actual malice is protected under the act. Are there factual questions, then, that we would be concerned with, as opposed to pleading? Well, yes, because, and in fact, you are entitled to some discovery. In this case, there was a deposition. The court acknowledged that it reviewed the deposition in reaching its conclusion. It looked at what Mr. Walsh testified about in evaluating whether or not we had met our burden of providing clear and convincing evidence that Mr. Walsh was not engaged in petitioning activity at the time or conduct in furtherance of petitioning activity at the time of the conduct and engaging in the conduct that was at issue in the lawsuit. So there very well may be a question of fact to be resolved by a trial court. Mr. Sheehan has suggested that we adopt a rule so that there would be an appeal to the appellate court. Of course, there hasn't been any appeal, and normally that's where the first appeal would be. Would it be possible for this court simply to send it back to the appellate court under our current status of the law and the rules saying they should look at this issue? As a supervisory order? I guess it would be. Because I'm not aware of any. That would be the mechanism, I guess, that I would guess would be available. I don't think, again, that in this particular instance there is any reason to treat this particular litigant any different than any other litigant who is unsuccessful in bringing a motion to dismiss. I believe that in this instance the appellate court was correct that the issue was actually moot when it reached the appellate court as a consequence of the dismissal. And in fact, again, despite all the angst and worry about being in purgatory and so forth, that's purgatory of their own making. It was a 2-6-15 motion rather than if they wanted an expedited review and decision, they could have and should have, I guess, stuck with their guns and pursued the 2-6-15 motion. It would have resolved the case much earlier and avoided substantial expense. So what order do you think we need to do? Our position is that the court should affirm the dismissal, the appellate court's finding that the issue was moot. And alternatively, if it does ultimately review the case on the merits, then it should find that the trial court was correct in its ruling. It should not overrule the trial court. I don't believe that there is a reason to remand this matter to the trial court for any basis, though. Thank you very much. Justice Carbiner, there is nothing left for the trial court to decide. We filed the motion under the procedures of Rule 20. We took discovery, discovery closed, both sides asked for discovery, he made rulings, they haven't filed any, they haven't secured any objections, they haven't raised any objections, there's nothing left to decide. What would happen, Your Honor, is that it would get sent back to the trial court only for the attorney's fees issues. And we were specific in our request to ask for the attorney's fees for the fees expended in bringing the motion and bringing our Rule 383 motion, bringing it to the appellate court and bringing it to this court, because all of those... I'm troubled by something, and you tell me why I shouldn't be troubled. You know, we spent a lot of time talking about the tension between the Act and what happens out there in the real world with respect to litigants, with respect to the appellate court, and I appreciate that, and you correctly state where the Rules Committee, what they've been talking about doing. But in this particular case, I just think it's a procedural nightmare of sorts, and are we going to be doing an injustice to our other rules of law by giving you the relief you requested? Now, let me tell you why I say that. You chose to file a 2615 motion to dismiss prior to filing the motion to dismiss based on the SLAP suit. We don't have a case in which there's a motion to dismiss based on SLAP in which you'd be entitled to attorney's fees and per the legislation and appeal. We don't have a case in which the, you file that motion first, and the trial judge looks at it and says, well, I'm not going to rule on that, but I'm going to rule on, I see innocent construction here. So as a result of that, I'm dismissing this case. There's no defamation. Innocent construction applies. Then you appeal to the appellate court and say, wait a minute, I filed this based on SLAP, but I want my attorney's fees here. What you did was file the 2615 first, and before that could be decided, the circuit court gave you the relief requested in your first motion, namely that there wasn't a sufficient complaint for defamation, and it's out. So my problem, and I know it's a long-handed question, is we say, oh, yeah, you've got a right to an immediate appeal, we're going to change our rules, we're going to do this, and what happens to our mootness situation where you're getting exactly, the trial court gave you exactly what you asked for first, and the appellate court says, we're not going to address this. I mean, that's my problem. Your Honor, under the act, these motions of procedures, there's no timeline. There are some acts, some SLAP statutes that say that you have to do it within a certain time. This was a brand-new act, and quite frankly, I'll tell you the reason why I didn't do it is I didn't know about this act. I filed the 2615 because I said this is a frivolous lawsuit, which turned out to be one. The moment I read about this, all I did was file my motion. It wasn't fully briefed, it wasn't argued, there was a motion pending. But your ultimate prayer is for dismissal of the complaint, not for attorneys. Your ultimate goal when somebody files a lawsuit is to get the lawsuit dismissed, and I ask counsel that with respect to the fact that they found innocent construction and dismissed his complaint, if the appellate court would overturn that tomorrow. I know there's a stay, I know there's a bankruptcy. If they overturn it tomorrow, maybe there's an argument there. You go back and you say, okay, now I'm going to file a SLAP suit. This was decided based on 2615 of innocent construction, now I'm going to file a SLAP suit. But as it stands right now, is the appellate court wrong in saying it's moot because you've got the relief you're requesting? No, yes it is wrong, Your Honor. Again, because what you're stating is that the appellate, that I got everything I wanted, and I didn't get everything I wanted. What I didn't get are the substantive rights. I didn't get this to be identified as a SLAP. There are societal indications, there's vindication for identifying it. Let me stop you there. If there was a 2615 motion to dismiss based on innocent construction, and the trial court says, right, it's off. If I did file a motion, correct. Well, wait a minute. And it goes up to the appellate court, and the appellate court affirms and says, right, no defamation case. You would have no right in that instance to go back into the trial court and say, now I'm filing a SLAP suit. I'm filing a SLAP motion to dismiss because now I want attorney's fees. I mean, you picked your poison here, right? You came in knowing it or not knowing about it. You did file a motion that the trial court acted upon that gave you dismissal of the case. But, Your Honor, under the act, if you file a motion, you only get attorney's fees in connection with the motion. So this idea that it's irrelevant that I filed the 615 before or after. You never withdrew your 615 motion to the appellate court. I asked the court to stay it, and I got an order stating it, and that's exactly what I said. I said, Your Honor, we're filing under this new procedure. We have a pending 615 motion. I'm asking you to stay that. I'm asking you to stay discovery and resolve this under this new act because I have substantive rights under this new act. And if I can point you to a case. The trial judge ruled on the motion. Was that an error then, ruling on the 264? No, no. He stayed it, and he said, oh, okay, go ahead. Do what you have to do. We went through that process. He denied my thing. He said, all right, now let's finish the Rule 615. Then we finished our briefing, had an argument, and I won. So, Your Honor, I think the best case, obviously this is a case of first impression, but the best case that I can give you is Morris v. They came in and filed a motion to strike, which is the equivalent of motion to dispose under our act, and then they withdrew it. And then the defendant said, well, I want to go off to my attorney's fees, and the appellate court said, you know what, you have a right. The whole purpose of this act is to prevent people from going in and filing frivolous lawsuits. And there's a deterrent effect to identify this as a frivolous lawsuit, and you should get all your attorney's fees because otherwise, what they will do is by filing the thing, by filing the lawsuit, the mere filing it is chilling your free speech rights. So you really have to look at these as two separate things because I cannot get under 2615 what I can get under the act. It's two totally different vehicles in which to end a case. But you could have either withdrawn, rather than stayed, you could have withdrawn the 2615 motion. You could have stood on the denial of the act motion, right, and preserved that. I'm in the same position I'm in right now, Your Honor. You're in a little bit different position because the trial judge eventually ruled on the 2615. Yeah, but again, Your Honor, I am not, by ruling on the 2615, you're ending the lawsuit, which is good. But that's not the rights I'm trying to get under the act. I mean, it's two different things, and there is, I mean, the legislature, the General Assembly said that it is a part of the public's policy to identify these cases, to adjudicate these cases. Is there anything in the act that you can point to that would give you the right under these circumstances to move forward? Yes, Your Honor, it's Section 20, which reads, Section 20A, which reads, an appellate court shall expedite any appeal or other writ, whether interlocutory or not, from a trial court order denying that motion. So if I can't get it under the interlocutory way, there's only one other way, or not, which is upon final judgment. Upon final judgment, I'm asking the court, or the appellate court, now this court, to vindicate those rights, to say the court was wrong. And the problem is, if you don't do this, then in every true SLAPP case that you file a motion, Your Honor, taking your example, if I do a file 615, if I just came out and filed my SLAPP, and the court says, no, you're wrong, then I do a 2615, and then I win, and if it's by any measure a SLAPP suit, that person will not have a right to appeal. Which is completely contrary to the purpose of this, which is to identify these cases. If you look at the General Assembly wanted to give you an immediate right to do it. If you can't get that because these things are in harmony, the Supreme Court rules and the section, now you're saying you can't get it on a final order? Then you're always stuck with this unreviewable decision. Mr. Sheen, do I have this wrong? Defendant filed a motion for supervisory order in this court asking this court to direct the circuit court to grant the motion to dismiss pursuant to the CPA. That's correct, right? Correct, Your Honor. While defendant's motion for supervisory order was pending, the circuit court granted defendant's section 2615 motion to dismiss plaintiff's lawsuit with prejudice. Was the trial judge in error to grant that motion to dismiss? Was that still supposed to be stated? No, it was still pending. But you said that he stated until there was a determination. Oh, I'm sorry, no, he stated while we took the discovery, and then he heard it, and then he denied it, and then he brought it back up and said, all right, let's finish our briefing. During that time, I asked this court for a supervisory order. Your Honor, my time is up. May I conclude or finish?  Thank you, Your Honor. For all the reasons stated today and in my briefs, I ask that you reverse both the appellate court order, the trial court order, and render instructions consistent with my briefs. Thank you.